UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**PETER M.,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:20-cv-01773-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on October 6, 2020, denied Plaintiffs application for disability insurance benefits. Plaintiff has now moved for judgment on the pleadings (Doc. 7) and the Commissioner has filed a similar motion (Doc. 8). For the following reasons, the Court will **GRANT** Plaintiff's motion, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

### I.  BACKGROUND

    Plaintiff filed his application for benefits on September 4, 2018 alleging that he became disabled on December 31, 2011. After initial administrative denials of his claim, Plaintiff appeared and testified at a video administrative hearing held on February 28, 2020. A vocational expert, Amy L. Salva, also testified at the hearing.

    The Administrative Law Judge issued an unfavorable decision on July 9, 2020. He first found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2017, and that he had not worked since his alleged onset date. Next, the ALJ concluded that Plaintiff suffered from severe impairments including lumbago, sleep apnea, obesity, major depressive disorder, and anxiety with social phobia. At the next step of the sequential evaluation process, the ALJ found Plaintiff's impairments, considered singly or in combination, did not meet the criteria for disability set forth in the Listing of Impairments.

    The ALJ then made the following residual functional capacity determination. He concluded that Plaintiff could perform a reduced range of light work, with frequent climbing of ramps and stairs as well as frequent balancing and stooping, but with only occasional climbing of ladders, ropes, or scaffolds and only occasional kneeling, crawling, crouching, working at unprotected heights, being around moving mechanical parts, and working in extremes of

temperature.  Lastly, the ALJ determined that Plaintiff could interact with coworkers on occasion, could not do jobs that required public contact, and was able to make simple work-related decisions.  With that residual functional capacity, the ALJ determined that Plaintiff could not do his past relevant work as an inspector, but he could, based on the testimony of the vocational expert, perform light jobs such as retail marker, inserting machine operator, and small parts assembler, all jobs which exist in substantial numbers in the national economy.  Consequently, the ALJ found that Plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff, in his motion for judgment on the pleadings, raises a single claim of error, stated as follows:

> The ALJ rejected the only retroactive opinion evidence in this file and erroneously failed to develop the record with retroactive opinion evidence relevant to the time period at issue in this claim involving a remote date last insured for disability insurance benefits; as a result, the ALJ's RFC was not based on substantial evidence.

Plaintiff's Memorandum, Doc. 7-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 48 years old on the date of the administrative hearing, testified, first, that he had graduated from medical school and started, but did not complete, a residency in family medicine.  He never obtained a medical license, and last worked as an inspector at various meat packing plants.  He left that job for several reasons, including dissatisfaction with management and the fact that his position was going to be eliminated.  He believed that he would be offered a position in a different part of the country, likely in a slaughterhouse, and his anxiety and depression would have made that work difficult for him.

When asked about his anxiety and depression, Plaintiff said that he had developed those conditions while still in high school and that he had experienced recurring thoughts of suicide, especially when dealing with the demands of his medical residency.  Plaintiff also described physical ailments including a herniated disc in his neck and chronic low back pain radiating into both legs, which, combined with his sleep apnea, affected his sleep.  He then testified that he spent the time after leaving his inspection work writing a book and maintaining a blog, but the book was ultimately not successful.

At the time of the hearing, Plaintiff was seeing a counselor and taking medication for mental impairments.  He was not taking medication for back pain, however.  He had periodic episodes of sciatica and believed he could not stand for prolonged periods of time, lift, or engage in repetitive bending.  He had a gym membership at one time, but let it lapse after he spent a year

cleaning out his father's home following his father's death. He could still walk a mile and had no problem sitting, but standing in one place was more problematic. Plaintiff said he played golf up until two years before the hearing but had to stop due to his neck and back pain. Plaintiff further testified that he lived with his sister and was able to cook meals, clean, do laundry, and go grocery shopping. His hobbies including reading and going to concerts. He had applied for a number of sedentary positions but had never gotten as far as a job interview.

The vocational expert, Ms. Salva, first said that Plaintiff's past job as an inspector was a light, skilled occupation. She was then asked questions about a person with Plaintiff's vocational profile and who was limited in his interaction with coworkers and the public. The person was also capable of making simple job decisions. Ms. Salva replied that such a person could not do Plaintiff's past work but could do a number of medium, unskilled jobs. If the person were limited to light work and also had various postural, environmental, and mental limitations, he could still be employed as a retail marker, inserting machine operator, or small parts assembler. If, however, the person were off task for 15% of the time or would miss two days of work per month, he was not employable. The same would be true if he could not sustain work activity for the required 40 hours per week.

### B. The Medical Evidence

The Court will now summarize the medical records which relate to the relevant time frame. Treatment notes from 2012 to 2016 confirm that Plaintiff had been suffering from back pain for many years and had been referred to physical therapy on several occasions. A physical therapy note from December, 2016, shows that, after a course of therapy, he was able to resume a full range of activities without pain. Other notes show that even when he was working, Plaintiff was being treated for depression and anxiety. After he left his job, he continued to look for work. His GAF was consistently rated at 58. His mental status examinations during that time (recounted in detail in Plaintiff's memorandum) showed various abnormalities, including depressed mood, fair attention and concentration, and circumstantial or overinclusive speech. He underwent a tonsillectomy and uvulectomy in 2015 which improved his sleep apnea.

There are also treatment records which post-date the expiration of Plaintiff's insured status. In 2018, he referred himself to Horizon Corporations for mental health treatment, reporting high levels of depression and anxiety. He was treated with medication and psychotherapy.

### C. Opinion Evidence

Plaintiff's mental health counselor, Jessica Landen, completed a mental medical source statement on February 3, 2020. She had been seeing Plaintiff since September of 2018. Plaintiff's diagnoses included persistent depression and obsessive-compulsive personality. His symptoms included loss of interest in activities, thoughts of suicide, and a blunt, flat, or inappropriate affect. Ms. Landen indicated that none of Plaintiff's symptoms would interfere with his ability to perform work-related functions more than 10% of the time and that he would

be off task somewhere between 5% and 15% of the time. Also, he would miss about one day of work per month due to treatment or symptoms. She also answered "yes" to the questions, "Is your patient a malingerer," and "Are your patient's impairments reasonably consistent with the symptoms and functional limitations described in this evaluation," and she said that it was "likely" that his limitations were the same going back to December 31, 2011. (Tr. 434-38).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

### IV.  DISCUSSION

Plaintiff submits the following argument in support of his claim of error. He first notes that the ALJ rejected the only medical opinion in the record because it post-dated the expiration of Plaintiff's last insured date by over two years. Next, he points out that the ALJ did not call a medical expert to testify, nor did he seek any other medical opinions about Plaintiff's functionality during the relevant time period. That omission occurred despite the fact that the initial state agency review of Plaintiff's claim indicated that there was insufficient evidence to evaluate it. Based on this set of facts, Plaintiff contends, first, that the ALJ's decision was based

on insufficient evidence, and, second, that the ALJ had a duty to develop the record further by obtaining additional medical opinions. He further argues that this is not a case where a common sense evaluation of the evidence would allow an ALJ to formulate a residual functional capacity finding because it involves limitations arising from a long-standing mental impairment, which is ordinarily to be interpreted only by a medical expert.

The ALJ provided this reasoning in support of his residual functional capacity finding. He first determined that the objective medical evidence did not support Plaintiff's claim of disabling impairments. After discussing the evidence concerning Plaintiff's physical impairments (which is not in dispute here), the ALJ noted that at his mental status exams, Plaintiff's symptoms included "decreased mood, increased aggression and agitation, irritability, decreased in attention and grooming, low self-esteem, and fatigue." (Tr. 21). He also "reported feeling down or helpless, as well as some passive suicidal ideations and conflicts with coworkers." (Tr. 21-22). The ALJ also recounted the normal findings made at those examinations, including the fact that at times Plaintiff denied depression and anxiety and said that medication had improved his symptoms. *Id*. He also emphasized the fact that Plaintiff had not been to the emergency room or been hospitalized for mental health symptoms. *Id*.

Next, the ALJ discussed the opinion evidence, which, as noted, consists only of the opinion expressed by Ms. Landen, Plaintiff's counselor. After summarizing her opinion, including the fact that Plaintiff would be off task for up to 15% of the workday, the ALJ noted that Ms. Landen considered Plaintiff to be a malingerer and that although she said it was likely that his limitations, as she saw them, had existed since 2011, she did not express that opinion until 2020. For those reasons, and because he thought her opinions were "generally inconsistent with and not supported by the medical evidence throughout the relevant period," he did not find her opinion to be persuasive. (Tr. 22-23). He then accommodated Plaintiff's mental impairments by determining that Plaintiff could have only occasional interaction with coworkers, could have no public contact, and could make only simple work-related decisions.

This is clearly a case where the ALJ did not rely on any specific medical opinion in order to formulate a residual functional capacity finding. This Court has spoken in the past to the question of when an ALJ may make a residual functional capacity determination which does not match any of the opinion evidence. It said this about the Court of Appeals' decision in *Matta v. Astrue,* 508 Fed.Appx. 53 (2d Cir. Jan 25, 2013), a case often cited in this context:

> *Matta*, like the present case, involved an RFC which took into account, but did not mirror, the opinions of a number of different sources. The Court rejected the identical argument made by Plaintiff here - that the ALJ must necessarily have used his own lay opinion to craft the RFC because it did not match any one source's opinion - holding that "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). This Court has routinely applied that holding in similar

situations. *See, e.g., Allen v. Comm'r of Social Security*, 351 F.Supp.3d 327 (W.D.N.Y. 2018).

*Riley v. Comm'r of Soc. Sec.*, 2019 WL 5287957, at *4 (W.D.N.Y. Oct. 17, 2019). However, as Plaintiff correctly points out, there are times when the evidence is not susceptible of lay interpretation, and an ALJ supplants the role of the medical experts by reaching a conclusion that is beyond the expertise of a lay person. *See, e.g., Ortiz v. Colvin*, 298 F.Supp.3d 581 (W.D.N.Y. 2018).

This case presents particular challenges to the ALJ's efforts to determine Plaintiff's residual functional capacity, both because of the lack of any persuasive (at least in the ALJ's view) opinions, the existence of only a single opinion, and the fact that no functional capacity determination was made by any of the treating sources (or anyone else) during the relevant time period. The fact that the most significant impairments in this case are mental impairments adds to the problem. Even the state agency reviewers thought the record was not complete enough to evaluate Plaintiff's claim. Additionally, although the ALJ found Ms. Landen's opinion not to be persuasive, he did seem to place weight on her conclusion that Plaintiff was a malingerer, even though she also indicated that his symptoms were consistent with the evidence, which seems to imply just the opposite.

This Court has, as Plaintiff notes in her memorandum, remanded numerous cases where the record did not contain enough evidence for the ALJ to make a reasoned decision based on evidence other than his own lay interpretation of the evidence. Particularly in cases where the medical evidence contains complexities, an ALJ simply does not possess the expertise needed to make judgments about how medical findings should be translated into functional limitations. *See, e.g., Dale v. Colvin*, 2016 WL 4098431, *4 (W.D.N.Y. Aug. 2, 2016). That is especially true when a mental impairment is involved. As this Court observed in *Deshotel v. Berryhill*, 313 F. Supp. 3d 432, 435 (W.D.N.Y. 2018),

> the leeway given to ALJs to make "common sense judgments" does not necessarily extend to the assessment of mental limitations, which are by their very nature "highly complex and individualized." *Nasci v. Colvin,* 2017 WL 902135 at *9, 2017 U.S. Dist. LEXIS 31937 at *26 (N.D.N.Y. 2017) (because mental limitations determinations are extremely complex, an ALJ's mental RFC finding cannot be rendered solely on common sense, but requires medical opinion evidence).

Here, it is not apparent how the abnormal findings reported in the mental health records compiled prior to June 30, 2017 translate into limitations on Plaintiff's abilities to perform the mental demands of sustained work activity, especially in light of the ALJ's determination that Ms. Landen's opinion - which did address many of those issues - was considered not to be persuasive. Although the Commissioner argues that her opinion is supportive of the ALJ's determination, the ALJ himself did not think that to be the case. Further, Plaintiff is correct that the ALJ was not entitled to accept only those portions of the opinion which favored a finding of

not disabled without providing some explanation as to why the opinion concerning Plaintiff's ability to stay on task was not accepted.  The ALJ's explanation that the opinion, in general, was inconsistent with the balance of the medical records, might support his finding that the opinion is not persuasive - although it is not clear what specific portions of the record the ALJ was referring to - but that leaves open the question of exactly what mental limitations Plaintiff had during the relevant time frame.  Without some expert evaluation of this record, that question simply cannot be answered.  Consequently, the case will be remanded for supplementation of the record with some evidence that sheds more light on Plaintiff's mental functioning during the period in question.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 7), **DENIES** the Commissioner's motion (Doc. 8), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four. Commissioner.

/s/ **Terence P. Kemp**
**United States Magistrate Judge**